Robert C. Griffin
CROWLEY FLECK PLLP
P.O. Box 2529
Billings, MT 59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 256-0277
E-Mail:     rgriffin@crowleyfleck.com
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | | |
|---|---|---|
| CITY OF GREAT FALLS, | ) | Cause No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **COMPLAINT AND DEMAND FOR** |
| TYLER TECHNOLOGIES, INC. f/k/a | ) | **JURY TRIAL** |
| NEW WORLD SYSTEMS | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, City of Great Falls, sues defendant, Tyler Technologies, Inc. f/k/a

New World Systems Corporation, and alleges:

1.      Plaintiff City of Great Falls (the "City") is a municipality duly

organized and existing under the laws of Montana and located in Cascade County,

Montana.

2.      Upon information and belief, defendant Tyler Technologies, Inc. ("Tyler") is a Delaware corporation with its principal place of business at 888 West Big Beaver Road, Troy, Michigan 48084.

3.      This action is brought under the Copyright Laws of the United States, Title 17 of the United States Code, because this matter concerns rights in copyrighted software.  This action is also brought under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4.      This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and/or 2202.

5.      This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the matter in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

6.      This action concerns claims arising from the transaction by the defendant of business within the State of Montana, the commissions of acts by the defendant which have resulted in the accrual within the State of Montana of a tort action, and a contract or contracts for services to be rendered and/or materials to be furnished in the State of Montana.

7.      Venue is proper in this district pursuant to U.S.C. § 1391.

8.    On or about March 6, 1997, the City entered a Standard Software License and Services Agreement (the "1997 Agreement") with Tyler's predecessor New World Systems Corporation (the term "Tyler" as used herein refers collectively to both Tyler Technologies, Inc. and New World Systems Corporation).  Under the 1997 Agreement, Tyler agreed to provide computer software that would perform various public safety functions.

9.    The City and Tyler subsequently entered into a series of modifications to the 1997 Agreement, which would typically be entitled "Additional Services Agreement" or "Additional Software License Agreement", pursuant to which the City licensed additional software from Tyler, including Tyler's Aegis brand computer-aided dispatch and public safety software.

10.    On or about June 22, 2011, the City and Tyler entered into a modification to the 1997 Agreement entitled "Additional Software License Agreement", which incorporated as one of its exhibits a Standard Software Maintenance Agreement (collectively, the "2011 Agreement").  Under the 2011 Agreement, Tyler agreed to provide an upgraded version of its Aegis brand computer software (the "Software"), which would perform various public safety functions.  (The 1997 Agreement and the 2011 Agreement may be collectively referred to herein as the "License Agreement").

11.     Tyler provided the City with specifications for hardware and third-party software the City would need to obtain separately in order to use the Software.  In reliance on these specifications, and to ensure that its hardware and software infrastructure would support future upgrades of the Software, the City has invested thousands of dollars in hardware and third party software that was significantly better than the requirements specified by Tyler.

12.     Because of the close cooperation between the City and Cascade County (the "County") in providing law enforcement and other public safety functions, certain public safety functionalities of the Software are licensed for use by the County.  Accordingly, both the City and the County depend upon the Software to perform basic and vital public safety functions.

13.     Despite the representations and warranties made by Tyler, and the City's investment of thousands of dollars in hardware and infrastructure as well as hundreds of hours in training its staff and trouble-shooting, the Software has never performed as warranted.

14.     In accordance with the License Agreement, the City has repeatedly provided Tyler with more than adequate notice of the defects in the Software. Tyler has repeatedly acknowledged the numerous defects in the Software.

15.    In accordance with the License Agreement, the City has repeatedly demanded that Tyler correct the defects in the Software, and has given Tyler more than adequate opportunity to cure the defects, to no avail.

16.    Over the past five years, the City has paid Tyler approximately $870,000 under the License Agreement for software that has never been in compliance with Tyler's warranties.

17.    Because of Tyler's breach of its warranties as set forth above, the City is entitled to terminate the License Agreement.  The City has given Tyler notice of its intent to terminate the License Agreement unless Tyler cures the defects in the Software within 90 days of such notice.

18.    Based on Tyler's long history of repeatedly assuring the City that it would cure the defects in the Software but failing to do so, it appears unlikely that Tyler will be able to cure the defects in the Software within 90 days.

19.    The License Agreement, which consists of a series of forms prepared by Tyler, is silent as to Tyler's duty after termination to cooperate in facilitating a transition to a new software vendor.

20.    The process of transitioning from the use of the Software to new public safety software will likely take a minimum of twelve months, including the time necessary to request bids, negotiate a contract with the new vendor, convert

the City's and County's existing data to the new system, and install, configure and test the new software.

21.    Despite the many defects in the Software, the City and County rely upon the Software to perform vital public safety functions, including dispatch of police, fire department and emergency medical staff, as well as corrections and inmate control.  The Software is also necessary to enable to the City and County to comply with federal and state law and regulations.  During the period in which the City transitions to new public safety software, it will be necessary for Tyler to continue to provide support services so that the City and County can continue to use the Software to perform these vital public safety functions.

22.    Because of the commercial impossibility of transitioning to new public safety software immediately upon termination of the License Agreement, and the significant public safety functions performed by the Software, it would be commercially unreasonable for Tyler to discontinue supporting the Software during the necessary transition period.

## COUNT ONE
### Breach Of Contract

23.    The City realleges and incorporates by reference Paragraphs 1 through 22 above.

24.    In the License Agreement, Tyler promised to provide the City with software that would provide numerous public safety and other functions, consistent with the representations made by Tyler to the City.

25.    Tyler has failed to provide the City with functioning software as it promised in the License Agreement.

26.    As the result of Tyler's breach of contract as described above, the City is entitled to damages in excess of $75,000.

## COUNT TWO
### Unjust Enrichment/Rescission and Restitution

27.    The City realleges and incorporates by reference the allegations in Paragraphs 1 through 22 above.

28.    Tyler has received the benefit of payments made by the City, without providing the agreed upon consideration in return.

29.    If Tyler is allowed to obtain the benefit of the payments received from the City, it would be unjustly enriched at the expense of and to the detriment of the City.

30.    The City is therefore entitled to rescind the License Agreement and to restitution of some or all of the money paid to Tyler.

## COUNT THREE
**Breach of Express Warranty**

31.     The City realleges and incorporates by reference the allegations in Paragraphs 1 through 22 above.

32.     In the License Agreement, Tyler expressly warranted that the Software would perform as specified.

33.     The software provided by Tyler has never performed as warranted.

34.     As the result of Tyler's breach of express warranty as described above, the City is entitled to damages in excess of $75,000.

## COUNT FOUR
**Breach of Implied Warranty**

35.     The City realleges and incorporates by reference the allegations in Paragraphs 1 through 22 and 32 through 34 above.

36.     The software provided by Tyler was not of merchantable quality.

37.     Tyler had reason to know of the particular purposes for which the City was purchasing its software, and that the City was relying on Tyler's skill or judgment to provide suitable software, yet the software was not fit for the purposes for which it was sold.

38.     As a result of Tyler's breach of the implied warranties of merchantability and of fitness for a particular purpose, the City is entitled to damages in excess of $75,000.

## COUNT FIVE
### Breach of Implied Covenant of Good Faith and Fair Dealing

39.    The City realleges and incorporates by reference the allegations in Paragraphs 1 through 22, 32 through 34, and 36 through 38 above.

40.    The agreements between the parties incorporated implied covenants of good faith and fair dealing imposed by operation of law.  Good faith between contracting parties requires one vested with contractual discretion to exercise it reasonably and not arbitrarily or capriciously, and parties to a contract impliedly promise not to do anything to destroy or injure the other party's right to receive the fruits of the contract.  Whenever the cooperation of one party is necessary to the other party's performance, there is an implied condition that such cooperation would be given.

41.    By reason of the agreements between the parties and the representations made by Tyler, a special relationship exists between Tyler and the City, by virtue of which Tyler had a contractual duty to perform its obligations in good faith.

42.    In its actions and conduct Tyler breached the reasonable expectations of the City and deprived it of the reasonable expectations set forth in the agreements, thereby violating the implied covenant of good faith and fair dealing.

43.    As a result, the City is entitled to damages in excess of $75,000.

## COUNT SIX
## Negligent Misrepresentation

44.     The City realleges and incorporates by reference the allegations in Paragraphs 1 through 22, 32 through 34, and 36 through 38 above.

45.     Tyler made untrue and misleading representations and/or omissions of fact to the City, when it represented that the Software would perform as specified.

46.     Tyler's untrue and misleading representations and/or omissions of fact were material in that, if the City had known the truth, the City would not have entered into the License Agreement, paid thousands of dollars to Tyler, and otherwise invested thousands of dollars and hundreds of hours in attempting to use Tyler's software.

47.     Tyler made the untrue and misleading representations and/or omissions of fact to the City without any reasonable grounds for believing the representations and/or omissions of fact were true.

48.     Tyler made the untrue and misleading representations and/or omissions of fact to the City with the intent that the City act upon them.

49.     The City was not aware that Tyler's representations and/or omissions of fact were untrue.

50.     The City was justified in relying on Tyler's untrue and misleading representations and/or omissions of fact.

51.     As a result of Tyler's untrue and misleading representations and/or omissions of fact, the City has sustained damages in an amount to be determined at trial.

## COUNT SEVEN
### Negligence

52.     The City realleges and incorporates by reference the allegations in Paragraphs 1 through 22, 32 through 34, and 36 through 38 above.

53.     In its dealings with the City, Tyler had a duty to exercise due care in recommending appropriate Tyler software, recommending the purchase of appropriate software and hardware from third parties for use with the Tyler software, installing the Software, maintaining the Software, and supporting the Software.

54.     Tyler has breached its duties as described above.

55.     As a result of the Tyler's breach of its duties as described above, the City has sustained damages in an amount to be determined at trial.

## COUNT EIGHT
### Declaratory Judgment

56.     The City realleges the preceding paragraphs 1 through 22, 32 through 34, 36 through 38, and 45 through 51 above.

57.     The City is entitled to terminate and rescind the License Agreement because throughout the term of the License Agreement Tyler has failed to perform its duties thereunder.

58.     The License Agreement includes an arbitration provision that is unenforceable because it lacks mutuality, because the License Agreement was the product of negligent misrepresentations as set forth above, and because the City is entitled to terminate and rescind the License Agreement due to Tyler's failure to perform its duties thereunder.

59.     It would be commercially unreasonable to interpret the License Agreement so as to permit Tyler to discontinue supporting the Software during the period necessary to enable the City to transition to new public safety software.

60.     Pursuant to 28 U.S.C. §§ 2201 and 2202, the City is entitled to a declaratory judgment that the City is entitled to terminate and rescind the License Agreement; that the arbitration provision in the License Agreement is unenforceable; and that Tyler may not discontinue supporting the Software during the period necessary to enable the City to transition to new public safety software.

## COUNT NINE
### Injunctive Relief

61.     The City realleges the preceding paragraphs 1 through 22, 32 through 34, 36 through 38, and 45 through 51 above.

62.     By virtue of the foregoing, the City has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Tyler to maintain the status quo while the City transitions to new public safety software.

63.     Unless Tyler is preliminarily and permanently enjoined from discontinuing support for the Software during the software transition process, the City and others will be irreparably harmed by present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

64.     Unless Tyler is preliminarily and permanently enjoined from discontinuing support for the Software during the software transition process, the City and others will be irreparably harmed by potential harm to public safety and welfare, which is presently incalculable.  For example, without functional public safety software, the City may be unable to process emergency calls and dispatch emergency personnel to accident or crime scenes without undue delay.

65.     The City has no adequate remedy at law.

66.     Quantification of damages caused by Tyler's actions would be difficult or impossible to fully demonstrate and prove.

67.     The balance of equities weighs in favor of the City.

68.     An injunction, if issued, would not be adverse to the public interest.

WHEREFORE, the City of Great Falls respectfully requests:

A.      A declaratory judgment that the City is entitled to terminate and rescind the License Agreement;

B.      A declaratory judgment that the arbitration provision in the License Agreement is unenforceable;

C.      A declaratory judgment that Tyler may not discontinue supporting the Software during the period necessary to enable the City to transition to new public safety software;

D.      A Temporary Restraining Order, Preliminary Injunction and/or Permanent Injunction enjoining Tyler from discontinuing support for the Software during the period necessary to enable the City to transition to new public safety software;

E.      Judgment for damages sustained as a result of Tyler's breach of contract and other acts or omissions as set forth above, including but not limited to restitution of amounts paid under the License Agreement for services that were not rendered;

F.      Attorney fees and costs as permitted by law; and

G.      Such other and further relief as the Court deems just and appropriate.

## DEMAND FOR A JURY TRIAL

Plaintiff the City of Great Falls requests a jury trial as to all issues triable by a jury.

Dated this 8th day of April, 2016.

Respectfully submitted,

/s/ Robert C. Griffin
Robert C. Griffin
CROWLEY FLECK, PLLP
Transwestern Plaza II
490 N. 31st Street, Suite 500
P.O. Box 2529
Billings, MT 59103-2529
*Attorneys for Plaintiff*